THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KRZYSZTOF PIERSCIENIAK, on behalf of the Volt Technical Services Savings Plan, himself, and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLT TECHNICAL SERVICES SAVINGS PLAN, and VOLT INFORMATION SCIENCES, INC., a New York corporation,<br><br>Defendants. | Case No. C09-1461-JCC<br><br>ORDER |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 13), Plaintiff's response (Dkt. No. 17), and Defendants' reply. (Dkt. No. 19.) Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion and DISMISSES the case for the reasons explained herein.

I.     BACKGROUND

This case concerns the legality of certain rules and conditions governing employer matching contributions in an Employee Retirement Income Security Act ("ERISA") plan. Defendant Volt Information Sciences is a temporary employment agency that assists its employees in obtaining temporary jobs with Volt customers in the United States, Canada, and Europe. (Mot. 2 (Dkt. No. 13).) One such customer in the United States is Microsoft

Corporation. (*Id.*) Krzysztof Pierscieniak contacted Volt about employment opportunities in February 2007, and was placed with Microsoft on August 13, 2007. (*Id.* at 2 & 10.) Pierscieniak remained with Microsoft until August 11, 2008.[1]

As a field employee with Volt, Pierscieniak was eligible to participate in Volt's employee benefit plans, including the Volt Technical Services Savings Plan, an ERISA 401(k) plan ("the Plan"). (*Id.* at 3.) The Savings Plan contains a number of provisions concerning its vesting schedule, which governs when an employee becomes entitled to an employer's matching 401(k) contributions. Under these provisions, Pierscieniak was eligible for one of two different vesting schedules: regular or special accelerated.

The regular vesting schedule employs a "three-year cliff" mechanism, whereby nothing vests until three years of service, at which point the employee becomes 100 percent vested. (Mot. 4 (Dkt. No. 13).) The regular vesting schedule defines a year of service as a calendar year in which an employee worked at least 1,000 hours. (*Id.*) Because Pierscieniak did not work 1,000 hours in 2007 but did work 1,000 hours in 2008, he qualifies for one year of service under the regular schedule.

The special accelerated schedule provides that an employee becomes 100 percent vested upon the *earlier* of a) three years of service under the regular vesting schedule or b) one year of service at Microsoft, where a year of service is measured as twelve full months starting on the first day of the first full month that the employee is assigned to work at Microsoft. (*Id.* at 6.) Because Pierscieniak's first full month of employment was September 2007, and he left on August 13, 2008, he did not perform a year of service under the special accelerated schedule.

Under either schedule, then, Pierscieniak's employment is not enough for his employer contributions to vest. He now brings suit, alleging that the structure of the Plan deprived him of

---

[1] There is some dispute between the parties as to whether Pierscieniak worked until the August 11, 12, or 13. Parties agree, however, that the precise date is immaterial.

ORDER – 2
CASE NO. C09-1461 JCC

benefits, and that Volt breached its fiduciary duties to Plan participants. (Resp. 6–7 (Dkt. No. 17).)

## II.  APPLICABLE LAW

Summary judgment is appropriate if, after viewing the evidence in the light most favorable to the nonmoving party, the Court determines there are no genuine issues of material fact. FED. R. CIV. P. 56(c)(2). There is no genuine issue of fact for a trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court must inquire into "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

## III.  DISCUSSION

Pierscieniak argues that certain elements of the special accelerated vesting schedule are not in compliance with ERISA. Volt responds that as long as the regular vesting schedule is in compliance with ERISA, and participants are 100 percent vested when either of the two schedules is satisfied, then the terms of the special accelerated schedule cannot possibly violate ERISA requirements. Volt is correct. 29 U.S.C. § 1053(d) allows for the type of alternative schedule provided by the Plan: "A pension plan may allow for nonforfeitable benefits after a lesser period and in greater amounts than are required by this part." The Court sees no sensible

1  reason to penalize an employer for offering a more generous vesting schedule than ERISA
2  requires.

3  Undaunted, Pierscieniak identifies three potential problems with the structure of the
4  Savings Plan, which the Court will address in turn.

### A. Artificial Postponement of Vesting Credit

ERISA plans are regulated under Title 29 of the Code of Federal Regulations. These regulations prohibit an ERISA plan from using any vesting computation period that "would result in artificial postponement of vesting credit, such as a period measured by anniversaries of the date four months following the employment commencement date." 29 C.F.R. § 2530.203-2(a)

Pierscieniak argues that by starting the vesting clock on the first day of the first full month of employment, rather than the first day, Volt is artificially postponing vesting for any employee who does not start on the first day of the month. (Resp. 12 (Dkt. No. 17).) Pierscieniak claims that because he worked at Microsoft from August 13, 2007 to August 13, 2008, he completed his Year of Service and his employer contributions should vest. (*Id.* at 1–2.) Volt responds that because Pierscieniak's Year of Service is measured from the start of September 2007, his first *full* month, he completed only eleven months of service and did not complete the required amount of time for his employer contributions to vest. (Reply 1 (Dkt. No. 19).) Pierscieniak does not dispute that the regular vesting schedule is in compliance with ERISA. (*Id.* at 4.) And because participants are entitled to vest upon qualification under the earlier of a) the regular vesting schedule and b) the special accelerated vesting schedule, Volt argues that it is not possible that the Plan postpones vesting in violation of ERISA. (*Id.*) The Court agrees. Pierscieniak fails to provide persuasive authority for the proposition that where a Plan maintains two vesting schedules, each must independently meet the non-postponement requirements of ERISA. On the contrary, courts around the country have held that an employer

ORDER - 4
CASE NO. C09-1461 JCC

is free to determine the scope of employee's rights so long as the plan meets ERISA minimums. *Noell v. American Design, Inc., Profit Sharing Plan*, 764 F.2d 827, 831 (11th Cir. 1985) ("An employer is given the choice of determining the scope of its employee's rights to benefits so long as it satisfies the minimum vesting requirements of section 1053(a)."); *Lojek v. Thomas*, 716 F.2d 675, 678 (9th Cir. Idaho 1983) (finding no requirement for vesting of benefits before the ERISA minimums); *Hepple v. Roberts & Dybdahl, Inc.*, 622 F.2d 962, 966 (8th Cir. 1980) ("Within the limits of the minimum vesting requirements of § 1053(a), employers are given the choice of determining the scope of employees' rights to benefits.").

Because the regular vesting schedule satisfies ERISA minimums, and the Plan provides for 100 percent vesting when an employee first qualifies under either of the two vesting schedules, the Plan is in compliance with ERISA.

### B. Credit for a Year of Service

Pierscieniak argues that under the ERISA definition of a "year of service," he should be credited with a year under the special accelerated vesting schedule. (Resp. 18 (Dkt. No. 17).) Under ERISA, a "year of service" is defined as a "calendar year, plan year, or other 12-consecutive month period designated by the plan (and not prohibited under regulations prescribed by the Secretary) during which the participant has completed 1,000 hours of service." 29 U.S.C. § 1053(b)(2)(A). The parties do not dispute that Pierscieniak completed 1,000 hours of service within twelve consecutive months. Pierscieniak argues that his interest in the employer contributions should therefore vest under the special accelerated vesting schedule. Volt repeats its argument that multiple vesting schedules allow for multiple definitions of a year of service; under the special accelerated plan, a year of service is 12 full months, not 1,000 hours. A year of service under the regular plan is not equivalent to a year of service under the special accelerated plan.

Pierscieniak cites *Gennamore v. Buffalo Sheet Metals, Inc.*, 568 F. Supp. 931, 934 (W.D.N.Y. 1983) to support his argument that it is 1000 hours, not 12 continuous months of

1   presence, that constitutes a year of service. In that case, however, the employer had *one* vesting

2   schedule, and that schedule did not comply with ERISA. Volt has *two* schedules: one that is in

3   full compliance with ERISA, and one that allows for earlier vesting if certain conditions are

4   met. (Reply 7–8 (Dkt. No. 19).) Volt does not dispute that Pierscieniak's service in 2008 was

5   enough to credit him with one year of service under the regular vesting schedule. (*Id.* at 8.) But

6   the regular vesting schedule requires three years of service before vesting occurs, so

7   Pierscieniak is not entitled to any vesting of employer matching contributions.

8         **C.**    **Conflicting information**

9         Pierscieniak's final argument is that a conflict in plan documents should be resolved in

10  his favor. The Plan documents provide that matching contributions shall vest

> upon the earlier of the vesting schedule set forth in Section 11.2 of the Plan or upon completion of One Year of Service on assignment to Microsoft. For purpose[s] of this section, One Year of Microsoft service shall mean twelve full months on assignment to Microsoft . . . measured from the first full month that the Employee is assigned to work at Microsoft. . . .

14  (Reply 8 (Dkt. No. 19).) Pierscieniak argues that because "One Year of Service" is defined

15  under the regular vesting schedule as 1,000 hours during a 12-month period, any other

16  definition of a year of service is contradictory. (Resp. 21–22 (Dkt. No. 17).) *See Bergt v. Ret.*

17  *Plan for Pilots Employed by Mark Air, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002) (in the event

18  of an inconsistency, the interpretation more favorable to the employee controls).

19        The problem with Pierscieniak's argument is that there is no inconsistency or

20  contradiction. Throughout its documents, Volt is clear that there are two definitions of a year of

21  service. Immediately after the "One Year of Service on assignment to Microsoft" language, the

22  Plan explains that "One Year of Microsoft service shall mean twelve full months. . . ."

23  Pierscieniak's attempt to manufacture inconsistency strains credulity.

24        In all respects, Volt's Savings Plan is in compliance with ERISA. The Court sees no

25  problem with alternative vesting schedules that allow for the possibility that a plan participant

26  would vest sooner than ERISA requires. Pierscieniak has failed to raise any genuine issues of

27

ORDER - 6
CASE NO. C09-1461 JCC

material fact as to the Plan's compliance with ERISA. Accordingly, Plaintiff's claims are DISMISSED with prejudice.

### D.    Attorney Fees

Volt requests an award of attorney fees and costs pursuant to § 1132(g). Courts should consider the following factors when making such an award:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980). Although Pierscieniak's arguments are devoid of any merit, there is insufficient evidence of culpability or bad faith to warrant such an award.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt. No. 13) is GRANTED and the case is DISMISSED with prejudice. The Clerk is DIRECTED to CLOSE the case.

DATED this 7th day of July, 2010.

                                                             /s/ John C. Coughenour
                                                             John C. Coughenour
                                                             UNITED STATES DISTRICT JUDGE